# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | **JUDGE RICHARD L. SPEER** |
| James and Linda Pickerel | ) | |
| | ) | Case No. 10-3001 |
| Debtor(s) | ) | |
| | ) | (Related Case: 09-36895) |
| James J. Pickerel, et al., | ) | |
| Plaintiff(s) | ) | |
| v. | ) | |
| Household Realty Corporation | ) | |
| Defendant(s) | ) | |

## DECISION AND ORDER

This cause comes before the Court on the Motion brought by the Defendant to Dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The gravamen of the claims the Defendant's Motion seeks to dismiss concerns the Plaintiffs' allegation that it violated the discharge injunction as provided in 11 U.S.C. § 524. In furtherance of its Motion, the Defendant filed supporting Memoranda. Against the Motion to Dismiss, the Plaintiffs filed a Memorandum in support of their position. The Court has now had the opportunity to review the arguments presented by the Parties, as well as the pleadings submitted in this case. Based upon this review, the Court, for the reasons set forth herein, finds that the Defendant's Motion to Dismiss should be Granted.

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

## FACTS

In August of 2003, the Plaintiffs/Debtors, James and Linda Pickerel (hereinafter the "Debtors"), filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Case No. 03-36065). For assistance in filing their bankruptcy case, the Debtors employed legal counsel.

At the time they filed for bankruptcy relief, the Debtors were liable to the Defendant, Household Realty Corporation, based upon an extension of credit used by the Debtors to purchase a home. This liability was secured as a second mortgage against the Debtors' property.

On October 19, 2003, the Debtors executed a reaffirmation agreement in favor of the Defendant, agreeing to reaffirm the sum of $24,245.43. This reaffirmation agreement was signed by a representative of the Defendant on October 31, 2003, and then filed with the Court on November 10, 2003.

On November 21, 2003, the Debtors executed a second reaffirmation agreement with the Defendant. The Debtors' attorney certified the agreement four days later. This agreement was then signed by a representative of the Defendant on December 1, 2003, and filed with the Court on December 8, 2003.

The second agreement made minor changes to the terms set forth in the Parties' first reaffirmation agreement. Particularly, the second reaffirmation agreement lowered the monthly installment payment from $261.28 to $260.63; it also extended by one month the date on which payments were to commence. In most other respects, however, the Parties' two reaffirmation agreements were identical, leaving intact terms covering the principal balance, the applicable interest rate and the total number of payments due under the agreement.

Page 2

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

Shortly after the order of discharge was entered by the Court, the Debtors' bankruptcy case was administratively closed. In the first part of 2005, the Debtors filed a Motion to Reopen their bankruptcy case for the purpose of rescinding their reaffirmation agreements with the Defendant. After holding a hearing on the matter, the Court denied the Debtors' Motion to have their case reopened.

Around this same period of time, the Debtors defaulted under the terms of their reaffirmation agreement with the Defendant. Based upon their default, the Defendant, in June of 2006, commenced a suit in state court against the Debtors. Approximately one year later, judgment was entered for the Defendant. To satisfy its judgment, the Defendant began to garnish the Debtors' wages.

On October 5, 2009, the Debtors again filed for bankruptcy protection, seeking relief under Chapter 13 of the Bankruptcy Code. Shortly thereafter, the Defendant released its wage garnishment against the Debtors. On January 5, 2010, the Debtors commenced this adversary proceeding, alleging that the Defendant, by bringing suit against them in state court and then having their wages garnished, violated the discharge injunction of 11 U.S.C. § 524.[1] For this alleged violation, the

---

[1]

The Debtors' complaint is entitled "Complaint for Issuance of Order to Show Cause and For Contempt Judgment, Damages, Attorney's Fees and Costs." As the statutory basis for their complaint, the Debtors cited to both 11 U.S.C. § 362(a), (the automatic stay), and § 524 (the discharge injunction).

From the tenor of the Debtors' pleadings, however, no issue appears to exist in the present bankruptcy case that the Defendant, by garnishing the Debtors' wages, is liable for damages for a violation of the automatic stay of 11 U.S.C. § 362(a). The Court finds this approach to be proper. It is difficult to discern how the Defendant, having taken timely action to terminate the wage garnishment upon receiving notice of the Debtors' present bankruptcy filing, could be found to have willfully violated the automatic stay in the present bankruptcy case. *See In re Briskey*, 258 B.R. 473 (Bankr. M.D.Ala. 2001).

Page 3

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

Debtors seek in this proceeding compensatory damages of $100,000.00 and punitive damages of $15,000.00.

## DISCUSSION

In the matter before the Court, the Debtors, alleging a violation of the discharge injunction as provided in 11 U.S.C. § 524, seek to recover damages from the Defendant. The Defendant asks the Court to Dismiss the Debtors' action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Bankruptcy Rule 7012(b). A determination of the Defendant's Motion, concerning a violation of the discharge injunction, and an award of damages thereunder, is deemed by bankruptcy law to be core proceedings over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. 28 U.S.C. § 157(b)(1)(2)/(O); *In re Perviz*, 302 B.R. 357, 364-65 (Bankr. N.D.Ohio 2003).

A debtor seeking bankruptcy relief does so with the goal of obtaining a fresh-start. This goal is effectuated by the bankruptcy discharge. *Schultz v. United States*, 529 F.3d 343, 346 (6th Cir. 2008). For a debtor seeking relief under Chapter 7 of the Code, there is a presumption that the debtor shall be afforded a discharge, with § 727(a) of the Bankruptcy Code providing that, unless certain grounds are shown to exists, the "court shall grant the debtor a discharge[.]"

Once a discharge is entered, § 524(a) of the Code gives rise to an injunction. In general terms, the injunction provided in § 524 prevents a creditor from attempting to collect on any prepetition debt owed by a debtor, insofar as it concerns the debtor's personal liability on the obligation. Creditors who are found to have willfully violated the discharge injunction of § 524(a) are in contempt of the court's discharge order, and subject to sanctions, including the entry of an award of damages in the debtor's favor. *Duling v. First Fed. Bank of the Midwest (In re Duling)*, 360 B.R. 643, 645 (Bankr. N.D.Ohio 2006).

Page 4

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

Notwithstanding, debtors may agree to forgo the protections afforded by the discharge injunction, with § 524(c) of the Bankruptcy Code providing a mechanism by which a debtor may enter into contractual agreement with a creditor to pay an otherwise dischargeable debt. Such a contractual arrangement, known as a reaffirmation agreement, normally arises in the context where a debtor, having an interest in property subject to a security interest, wishes to retain the encumbered property. The effect of a properly executed reaffirmation agreement is to transform a dischargeable debt into a nondischargeable debt. *Jacobs v. Honda Fed. Credit Union (In re Jacobs)*, 321 B.R. 451, 453 (Bankr. N.D.Ohio 2004).

However, because reaffirmation agreements dilute a debtor's fresh-start, they are not favored, and debtors seeking to reaffirm a debt with a creditor should and are advised to exercise extreme caution before entering into such an agreement. To help ensure that such caution is exercised, the Bankruptcy Code, § 524(c), mandates that certain requirements be met to create an enforceable reaffirmation agreement. As a corollary, an agreement executed by a debtor that does not strictly comply with the requirements of § 524(c) is not enforceable against the debtor. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1067 (9th Cir. 2002).

In 2003,[2] when the Debtors executed their reaffirmation agreement with the Defendant, § 524(c) provided that, for debtors represented by legal counsel, compliance with the following requirements was necessary to create an enforceable agreement:

(1) the agreement must be in writing;

---

[2] In 2005, the Congressional Act, known as BAPCPA, effectuated changes to the requirements necessary for reaffirmation agreements. As these changes were not in effect at the time the reaffirmation agreements between the Parties were executed, they are not applicable in this matter.

Page 5

> (2) the agreement must be made prior to discharge;
>
> (3) the agreement must contain a clear and conspicuous statement notifying the debtor both of his/her rescission rights and of fact that he/she is not required to enter into agreement;
>
> (4) the agreement must be filed with bankruptcy court;
>
> (5) the debtor has not rescinded agreement within 60 days; and
>
> (6) debtor's counsel has signed an accompanying declaration attesting that the agreement (a) represents a fully informed and voluntary agreement by the debtor, (b) does not impose undue hardship on the debtor, and (c) was made on counsel's fully advising the debtor of legal effect and consequences of agreement and any default thereunder.

*BankBoston, N.A. v. Nanton*, 239 B.R. 419 (D. Mass. 1999).

In this matter, the Debtors have sought the protection of this Court on at least two separate occasions: Once in 2003, and again in 2009, with the subsequent bankruptcy case now pending before the Court. In their case filed in 2003, two reaffirmation agreements involving the same obligation were filed with the Court. It is the Debtors' position that neither of these agreements is legally binding. Accordingly, the Debtors maintain that, without a legally enforceable reaffirmation agreement, the Defendant should be found to have violated this Court's December 8, 2003 order of discharge when it subsequently sought and obtained legal redress on its claim in state court.

For their position, the Debtors, who were represented by legal counsel in their 2003 bankruptcy case, do not dispute that both of their reaffirmation agreements complied with many of the requirements outlined above. In detail, the Debtors acknowledge that, consistent with the first, third, fourth and sixth requirements, their reaffirmation agreements with the Defendant were in writing, that these agreements were filed with the Court, that the agreements contained the necessary disclosures, and that their legal counsel at the time provided the necessary attestation.

Page 6

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

The Debtors' focus in this regard falls solely upon the second and fifth requirements, *supra*, concerning timeliness and rescission. According to the Debtors:

> the entry of the second Reaffirmation Agreement had the affect of rescinding or canceling the first Reaffirmation Agreement and that was accomplished by the filing of the second Reaffirmation Agreement four (4) days after the date of Discharge. In other words, the Reaffirmation Agreement filed on December 8, 2003, had the affect of avoiding the initial Reaffirmation Agreement filed on November 10, 2003, and because the second Reaffirmation Agreement was filed in an untimely manner, it is not binding upon the Plaintiffs.

(Doc. No. 17, at pg. 2). Based upon this statement, the Debtors' position may be fairly stated in these terms: The first reaffirmation agreement executed by the Parties is unenforceable because it was rescinded as a result of and when the second reaffirmation agreement was filed with the Court. In turn, the second reaffirmation agreement is without legal effect because this agreement was not timely filed with the Court.

The Debtors' first point, that the execution and filing of their second reaffirmation agreement operated to rescind the first agreement, is controlled by § 524(c)(4). This provision confers upon a debtor the option to rescind an otherwise valid reaffirmation agreement. This protection is intended to provide a debtor with an adequate opportunity to reconsider their decision to reaffirm.

To effectuate the rescission of a reaffirmation agreement, § 524(c)(4) imposes two basic requirements on a debtor. The first is temporal, with § 524(c)(4) requiring that the debtor rescind the agreement prior to discharge or within 60 days after the agreement is filed with the court, whichever occurs later. The second requirement, and the one implicated in this matter, concerns the form of the recision.

Page 7

Section 524(c)(4) requires that, to rescind a reaffirmation agreement, the debtor must give notice of the rescission to the holder of the reaffirmed claim. For purposes of § 524(c)(4), notice does not require any writing or formal language. At the very least, however, a debtor's notice of rescission should adequately convey to the creditor the debtor's intent to no longer abide by the terms of the agreement.

In this context, the Debtors' execution of a second reaffirmation agreement hardly seems indicative of an intent to rescind the first agreement. Contractual principles, which are generally applicable when interpreting reaffirmation agreements, show why this to be true. *See In re Turner*, 156 F.3d 713, 718 (7th Cir. 1998) (conventional contract principles are applicable to reaffirmation agreements).

After being executed, a contract, like a reaffirmation agreement, may be rescinded. As well, after it is executed, parties to a contract can enter into an agreement to modify the contract. Coming full circle, a reaffirmation agreement, being simply a contract between a debtor and a creditor which is recognized by bankruptcy law, can also be modified. *In re Simonin*, 360 B.R. 627, 629 (Bankr. N.D.Ohio 2006). Accordingly, given this symmetry, principles applying to contractual rescission and modification are equally applicable when determining whether a reaffirmation agreement has been rescinded or instead modified.

The distinction, between recision and modification, can be pivotal. Although their effects can overlap, contractual rescission and modification are two distinct concepts, with different legal implications. When a contract is rescinded, it is "ineffective ab initio and no rights may be predicated upon that contract." *Rosepark Properties, Ltd. v. Buess*, 167 Ohio App.3d 366, 381, 855 N.E.2d 140, 152 (Ohio App. 10th Dist. 2006). In this way, a contract can only be rescinded in total. *Fenix Enterprises, Inc. v. M & M Mortg. Corp., Inc.*, 624 F.Supp.2d 834, 842 (S.D.Ohio 2009). Modifying a contract has a different effect.

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

Contractual modification involves a "change or an alteration that introduces new elements or details but leaves the general purpose and effect of the subject matter intact." 18 OHIO JUR. 3d Contracts § 241. In other words, modification involves only the alteration of particular details to a contract, leaving the substance of the contract intact. It does not, as when a contract is rescinded, cause the contractual obligations of the parties to be discharged.

In this matter, a comparison of the two reaffirmation agreements executed by the Parties reveals that the second agreement was substantially the same as the first agreement, making only minor changes to the monthly installment payment – from $261.28 to $260.63 – and postponing the commencement of the required payment by just one month. No differences, however, exist between the agreements when it comes to other substantive provisions such as the principal balance, interest rate and total number of payments due.

From an objective standpoint, therefore, it is difficult to construe how the execution of the second reaffirmation agreement was intended by the Debtors to convey an intent on their part to no longer abide by the terms of the first agreement. Instead, based upon their substantial similarity, it can be reasonably concluded that the second reaffirmation agreement was only intended to change certain terms of the Parties' first agreement, not to cancel the agreement outright. As such, the attributes of the Parties' second reaffirmation agreement are more akin to a modification, not a rescission.

Yet, even if this were not true, and the Debtors' second reaffirmation agreement effectively rescinded the first agreement, the Debtors cannot be relieved of their obligation to the Defendant. The relief sought by the Debtors requires a determination that both of their reaffirmation agreements are not legally enforceable. But, as now explained, the Debtors cannot make this showing for the second reaffirmation agreement, a conclusion compelled from a plain-meaning application of § 524(c) – specifically, the provision's filing requirement which the Debtors contend was defective.

Page 9

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

Section 524(c)(3) requires that, as a condition precedent to the enforcement of a reaffirmation agreement, it must be established that "such agreement has been filed with the court . . . [.]" Addressing this requirement, it is the Debtors' position that the Parties' second reaffirmation agreement is without legal effect because, although the agreement was filed with the Court, it was not timely filed. According to the Debtors, this defect exists because the second reaffirmation agreement was filed with the Court after the entry of their discharge order.

As a purely factual matter, the record in this case is consistent with Debtors' recitation as to the sequence of events. In their bankruptcy case filed in 2003, the Debtors executed their second reaffirmation agreement on November 21, 2003. A representative of the Defendant then signed the agreement on December 1, 2003. Thereafter, on December 8, 2003, the agreement was filed with Court, four days after the entry of the discharge order.

Contrary to the Debtors' legal position, however, nothing in § 524(c) requires that a reaffirmation agreement be filed with the Court prior to the entry of an order of discharge. Rather, § 524(c)(3) set forth that, as a prerequisite to the enforceability of a reaffirmation agreement, it need only be established that "such agreement has been *filed* with the court . . . ." (emphasis added). The provision makes no reference to the entry of a debtor's discharge or any other aspect regarding a limitations period for filing a reaffirmation agreement with the court.

It is well-established that a bankruptcy statute must be interpreted according to its plain meaning, except in the rare case in which the literal application of a statute would produce a result demonstrably at odds with the intentions of its drafters. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). In this matter, the Court has not been offered any reason, and none can be discerned, as to why allowing a reaffirmation agreement to be filed after the entry of an order of discharge would lead to an absurd result. In fact, the conditions giving rise to an enforceable reaffirmation agreement under § 524(c) contemplate that postdischarge

Page 10

activity may occur with respect to the agreement, with § 524(c)(4) affording a debtor the option of rescinding the agreement after a discharge is entered.

In sum, since § 524(c)(3) contains no explicit time restriction,[3] the filing of a reaffirmation agreement postdischarge, by virtue of that fact alone, cannot be read so as to render the agreement unenforceable.[4] In this regard, under a plain meaning approach, where no time limit is provided in a statute, it must be presumed that no time restriction was intended. *See* 3A Sutherland Statutory Construction § 72:3 (6th ed.).

The Debtors' position, equating the entry of their discharge with the tardiness of the Parties' reaffirmation agreement, presumably relies on § 524(c)(1). Under this provision it is specified that a reaffirmation agreement "is enforceable . . . only if such agreement was *made before* the granting of the discharge under section 727 . . . [.]" (emphasis added). "Made" as used in § 524(c)(1), however, is not synonymous with "filed" as used in § 524(c)(3), with the two requirements existing independently of the other.

Filing is an official act concerning the court. A document is filed by placing it in the possession of the clerk of the court after which time it is docketed and become an official part of the record. FED.R.BANKR.P. 5001, *et seq*; *In re Futrell*, 69 B.R. 378, 381 (Bankr. W.D.La.1987).

---

[3] A different result could be compelled today. Bankruptcy Rule 4008 was amended in 2008 so as to require that a "reaffirmation agreement shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a) of the Code." However, this Rule has no bearing in this matter as it was not applicable when the Debtors filed their reaffirmation agreements in 2003.

[4] *In re Golladay*, 391 B.R. 417, 422 fn. 1 (Bankr. C.D. Ill. 2008); *In re Merritt*, 366 B.R. 637 (Bankr. W.D. Tex. 2007); *In re Whisenant*, 265 B.R. 164, 166 (Bankr. E.D. Ark. 2001).

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

Dissimilarly, a reaffirmation agreement may be "made" for purposes of § 524(c)(1) without any court involvement.

Consistent with contractual principles, a reaffirmation agreement is "made" for purposes of § 524(c)(1) when there is a meeting of the minds between the debtor and the creditor. *In re Mausolf*, 403 B.R. 761 (Bankr. S.D.Fla. 2009). A meeting of the minds occurs when the parties intend to be bound by the terms of their agreement. No formality is required.

This means that, as applied to § 524(c)(1), a reaffirmation agreement may be "made" prior to the time the agreement – by virtue of its compliance with all of the conditions required under § 524(c), such as the filing of the document with the court – becomes legally enforceable under bankruptcy law. *In re Mausolf*, 403 B.R. at 765; *In re LeBeau*, 247 B.R. 537 (Bankr. M.D.Fla. 2000). In fact, when applying § 524(c)(1), a reaffirmation agreement may be found to have been "made," despite the failure of a debtor to formally execute the agreement until after the discharge is entered. For example, in interpreting § 524(c)(1), it was held in the case of *In re LeBeau* that a reaffirmation agreement, even though not signed by the debtors until after the entry of their discharge, was nevertheless "made" prior to the discharge when these two conditions were present: (1) the debtors had commenced performance under the agreement prior to discharge; and (2) the debtors, in their statement of intention, disclosed that they intended to reaffirm the debt. *Id*. at 540-41.

At the latest, however, a reaffirmation agreement will be considered "made" for purposes of § 524(c)(1) when the agreement is formally executed by all of the necessary parties – *i.e.*, (1) the debtor; (2) if applicable, the debtor's attorney; and (3) the creditor. *Id*. Yet, even when using this measurement, the Parties' second reaffirmation agreement still complies with the provision's mandate that the agreement be "*made before* the granting of the discharge under section 727 . . . [.]" (emphasis added).

Page 12

In this case, the Debtors executed their second reaffirmation agreement on November 21, 2003; four days later, the Debtors' attorney certified the agreement; a representative of the Defendant then signed the agreement on December 1, 2003. Accordingly, with this last event, the Parties' second reaffirmation agreement was fully executed, and thus the agreement may be deemed to have been "made" no later than December 1, 2003. The Debtors' discharge, however, was not entered until December 4, 2003, three days after the agreement was "made."

## CONCLUSION

When it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief, the Court is required to grant a motion brought by a defendant under Rule 12(b)(6) to dismiss. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 2917, 125 L.Ed.2d 612 (1993). For those reasons fully explained in this Decision, the Court can find no legal basis which would entitle the Plaintiffs/Debtors to the relief they seek. As such, this adversary proceeding must be dismissed.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

James J. Pickerel, et al., v. Household Realty Corporation
Case No. 10-3001

    Accordingly, it is

    **ORDERED** that the Motion brought by the Defendant, Household Realty Corporation, to Dismiss Plaintiffs' claims pursuant to Rule 12(b)(6), be, and is hereby, GRANTED.

    *IT IS FURTHER ORDERED* that this adversary proceeding, as brought by the Plaintiffs/Debtors, James and Linda Pickerel, be, and is hereby, DISMISSED.

    Dated: June 8, 2010

                                            Richard L. Speer
                                            United States
                                            Bankruptcy Judge

Certificate of Service

    This is to certify that a copy of the Decision and Order has been sent this 8th day of June, 2010 by ordinary US Mail service to the follow:

Elizabeth Norton
Erika Schoenberger
Frost Brown Todd LLC
10 West Broad Street
Suite 2300
Columbus, OH 43215

Household Realty Corp
961 Weigel Dr
Elmhurst, IL 60126

James J. & Linda M. Pickerel
4136 Burnham Ave
Toledo, OH 43612-1914

Gordon R. Barry
420 Madison Ave
1010 Ohio Bldg
Toledo, OH 43604

